UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                        For Online Publication Only
-----------------------------------------------------------------
STRATEGIC FORECASTING, INC., and
GEORGE FRIEDMAN

                     Plaintiffs,

    -against-                                                       **MEMORANDUM & ORDER**

                                                                                 12-cv-5389 (JMA) (ARL)

SCOTTSDALE INDEMNITY COMPANY,

                     Defendant.
-------------------------------------------------------------X

**AZRACK, United States District Judge:**

       In this insurance coverage dispute, the parties filed cross-motions for summary judgment. For the reasons stated below, the Court grants defendant's motion and denies plaintiffs' motion.

### I.    Background

       Plaintiff Strategic Forecasting, Inc. ("Stratfor") is a Texas company that gathers geo-political intelligence and provides analysis and commentary on international affairs. (Def. 56.1 in Opp'n to Pls.' Mot. for Summ. J. ("Def. Opp'n 56.1"), ECF No. 35-1.) Plaintiff George Friedman is Stratfor's Chairman and founder. (Id. ¶ 6.)

       Stratfor provides online analysis and commentary to individual and corporate subscribers, who pay a monthly fee to access the company's proprietary content. (Id. ¶ 4, 5.) Stratfor also provides other related services, such as custom research reports, analyst consultations and executive travel security assessments. (Id. ¶ 22; Decl. of Brian Brick in Supp. of Pls.' Mot. for Summ. J. ("Brick Decl."), Ex. 2 at Scott 00109, 00113.)

**A. Stratfor's Insurance Policy with Scottsdale**

       Defendant Scottsdale Indemnity Co., Inc. ("Scottsdale") is an insurance company issued

a Business and Management Indemnity Policy to Stratfor covering the period March 10, 2011 to March 10, 2012 (the "Policy"). (Id. ¶ 18.) Among other types of coverage, this policy contains Director and Officer and Company Coverage Sections, which is the operative coverage in this action. (Id. ¶ 19; Brick Decl. Ex. 1.) In connection with its purchase of the Policy, in March 2011 Stratfor completed a Renewal Application for Business and Management Indemnity Insurance (the "Application"). (Def. Opp'n 56.1 ¶ 21.)

In that application, Stratfor represented that it "renders professional services for others for . . . compensation" and described those services as follows: "[Stratfor] provides a complete and integrated portfolio of services ranging from online subscriptions to custom-tailored consulting projects." (Id. ¶ 22; Brick Decl. Ex. 2 at Scott 00109, 00113.). Stratfor also represented that its "services" include online subscription; on-call analyst consultations; executive briefings and seminars; industry risk profiles; threat & opportunity assessments; crisis intelligence; situation monitoring; security assessments; diagnostic protective surveillance; protective intelligence; custom reports and research; and executive travel security assessments. (Id.)

Both Friedman and Stratfor are insured under the Policy. (Def. Opp'n ¶ 26.) The Policy provides a $2 million coverage limit for Stratfor's liability and an additional $1 million for Friedman's liability, for an aggregate policy limit of $3 million. (Brick Decl. Ex. 1 at 2.)

The Policy requires Scottsdale to defend and indemnify the plaintiffs for claims made against them arising from acts occurring during the policy period. (Id. at SCOTTSDALE-000189.) This coverage, however, is subject to the Policy's various exclusions.

The instant action centers on the Professional Services Endorsement (hereinafter, the "PS Exclusion"), which provides:

2

> Insurer shall not be liable for Loss under this Coverage Section on account of any Claim alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the rendering or failing to render professional services, provided, however, this exclusion shall not apply to any Claim(s) brought by a securities holder of the Company in their capacity as such.

(Id. at SCOTTSDALE-000220.) The Policy does not define "Professional Services." (Def. Opp'n ¶ 38.) The Policy contains specific exclusions for claims involving bodily injury, emotional distress, damage or destruction to property, and certain pollution-related claims. (Brick Decl. Ex. 1 at SCOTTSDALE-000191.) The Policy does not include any specific exclusion for claims arising from computer hacking. (Def. Opp'n 56.1 ¶ 28.)

Plaintiffs characterize the Policy as an "all risk" policy. (Pls.' Mem. in Supp. of Mot. for Summ. J. at 1–2.) According to plaintiffs, unlike most other types of insurance policies that limit coverage only to certain specifically listed perils, an "all risk" policy covers all types of wrongdoing unless excluded by a specific exclusion. (Id.)

## B. The Class Action Complaint against Stratfor and Friedman

In December 2011, Stratfor's website was rendered inoperable by a series of hacking attacks by third-parties. (Def. Opp. 56.1 ¶ 7.)

On January 20, 2012, David Sterling and Sterling & Sterling, Inc. filed a class action complaint against Stratfor and Friedman (the "Class Action"). (See Sterling v. Stratfor Enterprises, LLC, No. 12-cv-297 (E.D.N.Y. 2012); Def. Opp. 56.1 ¶ 8.) According to the Class Action complaint, by early December 2011, Stratfor and Friedman had learned that an unknown and unauthorized third-party had obtained customers' personal and financial information from Stratfor's servers. (Def. Opp. 56.1 ¶ 10.) The Class Action complaint alleged that, after the initial hacking, Friedman met with the FBI to discuss the attacks. (Id. ¶ 11.) However, instead

3

of immediately informing customers about the hacking, Stratfor and Friedman allegedly withheld knowledge of the security breach. (Id. ¶ 12.) After the initial attack, additional hacking occurred. (Id. ¶¶ 7–13.)

The Class Action complaint raised claims for: (i) violation of the Stored Communications Act, 18 U.S.C. § 2701, et seq.; (ii) violations of New York General Business Law §§ 349 and 350; (iii) breach of contract; (iv) quasi-contract; and (v) negligence. (Id. ¶ 9.) The Class Action complaint alleged that Stratfor and Friedman were negligent in failing to reasonably secure its systems against hacking attempts. (Id. ¶ 14.) According to the Class Action complaint, Stratfor's security infrastructure was virtually nonexistent. (Id. ¶ 15.) The Class Action complaint also alleged that Stratfor and Friedman had a duty to inform Stratfor's customers about the attack and failed to promptly alert them after Statfor learned about the attack. (Id. ¶ 13.)

After Stratfor and Friedman informed Scottsdale about the Class Action, Scottsdale denied coverage and refused to defend the Class Action, citing the PS Exclusion. (Brick Decl. Ex. 7.) Stratfor and Friedman subsequently settled the Class Action with the Class Action plaintiffs. The court presiding over the Class Action granted final approval of the settlement in November 2012. (Def. Opp. 56.1 ¶ 59.) As part of the settlement, Stratfor and Friedman agreed to prosecute the instant coverage action against Scottsdale and to pay over any funds recovered in this action to the Class Action plaintiffs. (Id. ¶ 56.)

## II.   Discussion

### A.  Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating that "no genuine issue of material fact exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

"An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  When determining whether any material facts are in dispute, the court "must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.]" Marvel Characters, 310 F.3d at 286 (citations omitted).

### B.  Parties' Arguments

The parties have cross-moved for summary judgment.  The essential facts are not in dispute.  Defendant asserts that the PS Exclusion bars coverage for all claims alleged in the Class Action.  Defendant also argues that plaintiffs cannot recover because they breached the Policy by effectively assigning their rights under the Policy to the Class Action plaintiffs and their counsel as part of the settlement of the Class Action.  Defendant also contends that, even if the Policy covers the claims alleged in the Class Action, plaintiffs cannot recover the full $3 million policy limit because, according to the language of the Class Action settlement, plaintiffs received a release and were not legally liable for $3 million in damages.  Plaintiffs dispute each of

5

defendants' arguments. Because the Court agrees with defendant that the PS Exclusion precludes coverage for the claims at issue, it is unnecessary to reach defendant's other arguments.

**C. General Principles for Interpreting Insurance Policies under Texas Law**

The parties agree that the interpretation of the Policy, and its professional services exclusion, are governed by Texas law. "Texas law instructs that [courts] are to ascertain the scope of coverage by examining the policy as a whole and determining the parties' intent." Admiral Ins. Co. v. Ford, 607 F.3d 420, 423 (5th Cir. 2010) (quoting Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 202 (Tex. 2004)). "Exclusions are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." Gore Design Completions, Ltd. v. Hartford Fire Ins. Co., 538 F.3d 365, 370 (5th Cir. 2008) (interpreting Texas law). "If an insurance policy is ambiguous and is susceptible to more than one reasonable interpretation . . . it will be construed in favor of the insured." Simco Enterprises, Ltd. v. James River Ins. Co., 566 F. Supp. 2d 555, 561 (E.D. Tex. 2008) (interpreting Texas law). Thus, if an exclusionary clause is ambiguous, "'[t]he court must adopt the construction . . . urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" Utica, 141 S.W.3d at 202 (quoting Nat'l Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991)).

**D. The PS Exclusion Applies to the Claims in the Class Action Complaint**

The PS Exclusion states:

> Insurer shall not be liable for Loss . . . on account of any Claim alleging, based upon, **arising out of**, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the rendering or failing to render **professional services**, provided, however, this exclusion shall not apply to any Claim(s) brought by a securities holder of the Company in their capacity as such.

(Emphasis added).

The parties' arguments focus on two key terms in this exclusion: "arising out of" and "professional services."

Defendant argues that Stratfor's "professional services" include providing internet security to ensure the safety of customer data. Defendant also contends that the PS Exclusion is not limited to Stratfor's own professional services, but also covers professional services that would be performed by third party vendors, such as IT consultants. Plaintiffs counter that the "professional services" in the PS Exclusion is limited to Stratfor's analysis and publication of web-based international news.

For a task to qualify as professional services, "[t]he task must arise out of acts particular to the individual's specialized vocation, [and] . . . it must be necessary for the professional to use his specialized knowledge or training." Admiral Ins., 607 F.3d at 423 (5th Cir. 2010) (quoting Atlantic Lloyd's Insurance Co. of Texas v. Susman Godfrey, L.L.P., 982 S.W.2d 472, 476–77 (Tex. App—Dallas 1998)).

The Court doubts that defendant's interpretation of the term "professional services" is correct. It is, however, unnecessary to decide that question because, as explained below, even under plaintiffs' interpretation of professional services, the PS Exclusion still bars coverage because the claims at issue "aris[e] out of" Stratfor's professional services. Accordingly, for purposes of the discussion below, the Court assumes Stratfor's professional services are limited to Stratfor's analysis and publication of web-based international news and do not include providing online data security.

The next question is whether, accepting that view of professional services, the claims at issue were encompassed by the "arising out of" causation element of the PS Exclusion.

In interpreting professional services exclusions (as well as coverage provisions and other

7

exclusions), courts have distinguished between policies that use the term "arising out of" and those using other causation standards, such as "due to" or "caused by." This distinction is critical because, although the PS Exclusion uses the term "arising out of," almost all of the authority cited by plaintiffs concerns policies that used the term "due to" or some variation thereof.

> The Texas Supreme Court has explained that:
>
> "arise out of" means that there is simply a "causal connection or relation," which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation. . . . Likewise, the United States Court of Appeals for the Fifth Circuit has concluded that [under Texas law] "'[a]rising out of' are words of much broader significance than 'caused by.'"

Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 203 (Tex. 2004). In other words, "[a] claim need only bear an incidental relationship to the described conduct for [an "arising out of"] exclusion to apply." Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation, 173 F.3d 941, 943 (5th Cir. 1999). Thus, for "arising out of" clauses, but-for causation, rather than proximate causation, is required. See Utica, 141 S.W.3d at 203 ("Other jurisdictions also interpret 'arising out of' to exclude a proximate cause requirement.")

In contrast to courts' "broad, general, and comprehensive interpretation" of "arising out of," Scottsdale, 173 F.3d at 943, where a professional services exclusion uses the phrase "due to," "a more direct type of causation" is required that can tie "the insured's liability to the manner in which the services were performed," Utica, 141 S.W.3d at 203. This means that if a professional services exclusion excludes "coverage for any '[b]odily injury . . . due to rendering or failure to render any professional service,'" the exclusion will only apply if "the plaintiff's injury is caused by the breach of a professional standard of care." Id. at 202.

Plaintiffs take the position that the "arising out of" language in the PS Exclusion is

8

irrelevant. According to plaintiffs, if the Court accepts plaintiffs' interpretation of "professional services," then they necessarily prevail because, irrespective of the breadth of the PS Exclusion's "arising out of" language, there is not "any causal connection or any incidental relationship between the Class Action claims and Plaintiffs' provision of professional services." (Pls. Mem. in Opp'n to Mot. for Summ. J. ("Pls. Opp'n Mem.") at 16.) The Court disagrees.

Given that Texas courts broadly interpret "arising out of" to only require but-for causation, the Court concludes that, as a matter of law, the claims in the Class Action complaint arose out of Stratfor's provision of professional services. On its face, the explanation of "arising out of" causation set out in Utica precludes coverage for the claims at issue here. But for Stratfor providing online analysis and content to its customers, those customers would not have provided Stratford with their credit card and other personal information and would not have subsequently been injured by the hacking and Stratfor's failure to promptly disclose the hacking.

Other decisions have similarly applied a broad view of "arising out of" causation to preclude coverage based on "arising out of" exclusions. See, Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. U.S. Liquids, Inc., 271 F. Supp. 2d 926 (S.D. Tex. 2003) (holding that exclusion for claims "arising out of" the alleged discharge of pollutants included securities claim where company overstated revenues when it dumped pollutants into public sewer system rather than properly disposing of them), aff'd, 88 F. App'x 725 (5th Cir. 2004). The Court also notes that the instant scenario has some parallels to the following hypothetical, which the dissent in Utica posed to illustrate differences between "arising out of" causation and "due to" causation:

> A patient's slip and fall in a physician's office might be argued to "arise out of" the rendition of professional services simply because the patient was on the premises for purposes of treatment but could not be said to be "due to" the rendition of professional services unless the medical treatment (or failure to treat) directly caused the injury, say, by making the patient woozy and apt to fall.

9

Id. at 206 (Hetch, J., dissenting).[1] The relationship between a doctor's professional services and a slip-and-fall at the doctor's office is roughly analogous to the relationship between Stratfor's professional services and its alleged failure to safeguard its customer's information.

Plaintiffs' attempts to overcome the "arising out of" language in the professional services exclusion are unpersuasive. Plaintiffs never squarely address the broad causation standard posited in Utica for "arising out of" exclusions.[2] The cases cited by plaintiffs concern policies with "due to" clauses or other similar language regarding causation—none of plaintiffs' cases even address the term "arising out of." Nor do plaintiffs cite any authority addressing the limits of such causation.[3]

Instead, plaintiffs assert that the breadth of the PS Exclusion's "arising out of" language is irrelevant because Stratfor's professional services are not in any way "involved" in or "implicated by the Class Action's allegations." According to plaintiffs, defendant could only establish a causal connection to Stratfor's professional services if the Class Action had complained "about the content of [Stratfor's] website or about [its] analysis or publishing of web-based international news." (Pls. Opp'n Mem. at 11.) In support of this argument, plaintiffs cite to Gregg & Valby, L.L.P. v. Great Am. Ins. Co., 316 F. Supp. 2d 505, 506 (S.D. Tex. 2004).

---

[1] The dissenting opinion in Utica disagreed with the majority's narrow interpretation of "due to" causation, which required that the injury be caused by a breach of the professional standard of care. Nevertheless, the dissent's broader discussion of the breadth of "arising out" causation is still persuasive.

[2] Plaintiffs do not argue that the term "arising out of" is ambiguous.

[3] When an insured's business model centers on the provision of professional services, applying but-for causation to a professional services exclusion could conceivably exclude many, if not all, claims that the insured could possibly face. This could raise various issues for a court faced with interpreting such exclusions. For example, in certain situations, such an exclusion might render the insured's coverage illusory. Cf. Nat'l Union, 271 F. Supp.2d at 935–36 (rejecting waste disposal company's argument that the court's interpretation of an "arising out of" pollution exclusion in a securities claims policy would eliminate coverage for every possible securities violation and explaining that the "boundaries of the pollution exclusion simply are not limitless under the court's interpretation"). That does not appear to be a concern here because, whatever the outer limits of "arising out of" causation are, the PS Exclusion explicitly states that it does not apply to an entire class of claims involving securities. As such, the D&O policy would not be illusory. In any event, plaintiffs do not raise any argument that the breadth of "arising out of" causation must be limited given the specific circumstances of this case.

Gregg, however, says nothing about the scope of "arising out of" clauses. In Gregg, the court held that an attorney's billing activities and fee-setting practices were not covered by a professional services policy because those activities did not qualify as professional services. Although the court noted, in recounting the facts of the case, that the policy at issue contained "arising out of" language, the court did not address that language in its discussion (and there is no indication in the decision that the parties even raised any arguments about the "arising out of" language). Notably, one subsequent district court decision analyzing an "arising out of" coverage clause distinguished Gregg on this ground. See Shamoun & Norman, LLP v. Ironshore Indem., Inc., 56 F. Supp. 3d 840, 842 (N.D. Tex. 2014) (explaining that even if the court in Gregg did consider the meaning of "arising out of", "then it interpreted 'arising out of' extremely narrowly, demanding a form of causation akin to proximate cause").

Plaintiffs' contention that the PS Exclusion should be limited to lawsuits that complain "about the content of [Stratfor's] website or about [its] analysis or publishing of web-based international news" is flawed. Under plaintiffs' view, the PS Exclusion would be limited to claims that have a direct causal relationship to Stratfor's professional services. Such an interpretation—which appears to invoke a standard that is equivalent to (or possibly even more restrictive than) proximate cause—is not consistent with the explanation of "arising out of" in Utica. Contrary to plaintiffs' suggestion, the PS Exclusion is not limited to scenarios where Stratfor committed professional malpractice in its analysis or where the content of its publication and website are directly at issue, such as in a defamation suit.

Plaintiffs also contend that, even if the professional services exclusion reaches the Class Action's allegations regarding Stratfor's failure to secure its customer data, the PS Exclusion does not encompass the Class Action's failure to warn claim. Plaintiffs are wrong again. As

11

explained earlier, the PS Exclusion's "arising out of" language is broad enough to also include the failure to warn claim, which concerns Statfor's failure to promptly notify its customers of the hacking.

Similarly, plaintiffs also argue that the failure to warn claim triggered defendant's duty to defend the Class Action. "A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy." Utica, 141 S.W.3d at 201 (Tex. 2004). The problem for plaintiffs is that, as explained above, the PS Exclusion's "arising out of" clause encompasses the failure to warn claim. Again, all of the cases cited by plaintiffs on this point involved professional exclusions with different causation standards. For example, when a professional services exclusion requires "due to" causation, only claims that allege a breach of the professional standard of care will be excluded. Gore, 538 F.3d at 373. Accordingly, in such cases, if the underlying complaint alleges both professional negligence and ordinary negligence, the exclusion will not negate a duty to defend. Id. (finding insurer had duty to defend where the insured damaged an aircraft it was repairing and the complaint alleged that: (1) the design of the project, which constituted the insured's professional services, breached the professional standard of care; and (2) alternatively, a worker may have committed ordinary negligence by simply making a mistake in the implementation of that design). That, however, is not the case here.

### III.     Conclusion

For the reasons set forth above, defendant's motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied. The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Date:  September 30, 2015
Central Islip, New York

_____/s/ (JMA)_____
Joan M. Azrack
United States District Judge